# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### July 8, 2003 Session

## STATE OF TENNESSEE v. NESHA NEWSOME

**Direct Appeal from the Criminal Court for Shelby County**
**Nos. 0100561-64      Joseph B. Dailey, Judge**

---

**No. W2002-01306-CCA-R3-CD  - Filed December 30, 2003**

---

The defendant was convicted of especially aggravated kidnapping, aggravated kidnapping, aggravated robbery, and robbery.  The defendant contends on appeal that the trial court erred in (1) not properly transferring the case from juvenile court, (2) denying her request for a continuance, (3) admitting a tape recorded statement by the defendant, (4) admitting certain photographs of the victim, (5) refusing to allow expert testimony regarding the defendant's mental condition, (6) refusing to allow evidence of a co-defendant's subsequent crimes, (7) failing to instruct the jury on certain lesser included offenses, and (8) sentencing.  We conclude that the trial court erred in applying enhancement factors six and ten. The trial court also erred in not applying the mitigating factor (victim released alive) to the especially aggravated kidnapping conviction. The sentence is reduced for (1) aggravated robbery from ten years to nine years, (2) aggravated kidnapping from ten years to nine years, and (3) especially aggravated kidnapping from twenty-one years to twenty years. We reverse the trial court's determination that the sentences should be served consecutively.  We remand to the trial court to amend the judgment for case number 01-00564 to reflect that the defendant was a standard violent offender rather than a repeat violent offender.  We affirm the judgments of the trial court in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed in Part as Modified, Reversed in Part, and Remanded**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ROBERT W. WEDEMEYER, J., joined.

Danese K. Banks and Gerald D. Skahan, Memphis, Tennessee, for the appellant, Nesha Newsome.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; Amy P. Weirich and Stephen P. Jones, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

The defendant, Nesha Newsome, was charged with carjacking (No. 01-00560), especially aggravated kidnapping (No. 01-00561), especially aggravated robbery (No. 01-00562), two counts of aggravated robbery (No. 01-00563), and two counts of especially aggravated kidnapping (No. 01-00564). A jury found the defendant not guilty of carjacking, guilty of the lesser included offense of aggravated kidnapping (Class B felony), guilty of the lesser included offense of aggravated robbery (Class B felony), guilty of the lesser included offense of robbery (Class C felony)(two counts merged), and guilty of especially aggravated kidnapping (Class A felony)(two counts merged). The trial court sentenced the defendant as a Range I, standard offender to twenty-one years on the especially aggravated kidnapping conviction[1], ten years on the aggravated robbery conviction, ten years on the aggravated kidnapping conviction, and four years on the robbery conviction. The sentences were ordered to be served consecutively for an effective sentence of forty-five years. This appeal timely followed.

The defendant contends on appeal that the trial court erred in (1) not properly transferring the case from juvenile court, (2) denying her request for a continuance, (3) admitting a tape recorded statement by the defendant, (4) admitting certain photographs of the victim, (5) refusing to allow expert testimony regarding the defendant's mental condition, (6) refusing to allow evidence of a co-defendant's subsequent crimes, (7) failing to instruct the jury on certain lesser included offenses, and (8) sentencing.

**Facts**

On New Year's Eve, 1999, Bryan Morris and Holly Richardson[2] (the victims in this case) were attending a party at a friend's house in East Memphis. Around midnight, the victims left to get something to eat. Both of them lived in Bartlett and were not familiar with East Memphis. Miss Richardson drove Mr. Morris's car because he was too intoxicated to drive. They followed some other people from the party to the store. Before reaching their destination, the pair lost sight of their friends from the party. The victims became lost in an unfamiliar part of town. They stopped at a gas station to use a payphone. However, they were unable to contact anyone from the party.

Nesha Newsome (the defendant), Jermaine Bishop[3], and Mozella Newsome were outside the gas station where the victims stopped. Miss Richardson asked the group if they could help her, because she was lost. Initially, the group tried to give her directions. They then agreed to ride with

---

[1] The judgment form for this conviction (No. 01-00564) indicates that the defendant was sentenced as a repeat violent offender. The defendant was actually a standard offender, as correctly indicated on the other judgment forms. However, the trial court considered the proper sentencing range. The judgment form must be amended on remand to reflect that the defendant was a standard offender and not a repeat violent offender.

[2] At the time of trial, Miss Richardson's last name had been legally changed to Wright.

[3] Jermaine Bishop is also referred to in the record as "Sean" or "Shawn."

the victims and show them how to get back to the party. Miss Richardson agreed to bring them back after they found out how to get to the party. The three got into the backseat of the car that Miss Richardson was driving. Bishop instructed her to drive across the street to an apartment complex. Bishop and Mozella Newsome went inside, while the defendant remained in the car with the victims. They soon returned, and the group left, with Bishop giving directions.

On the way back to the party, Mr. Morris became ill because of his intoxication, and the group had to pull over. He went into a gas station, and Miss Richardson attempted to clean off the side of the car where Mr. Morris had vomited. The defendant, Bishop, and Mozella Newsome remained in the backseat of the car. Mr. Morris returned to the car, and the group again set out to find the party. On the way, Bishop and Mozella Newsome began whispering. They informed the defendant that they intended to "stick up" the victims. The group soon arrived at their destination. The victims went inside to inform their friends as to their getting lost. The defendant, Bishop, and Mozella Newsome remained in the car with the engine running. At one point, a friend of the victims came out and talked with them. The victims were in the house for several minutes. They returned to the car and left to take the trio back to the area where they had been picked up.

Bishop directed Miss Richardson to an area that she was not familiar with. He told her that they were going to his grandmother's house. At one point, Bishop told Miss Richardson to stop and turn out the lights. Believing that they had arrived at his grandmother's house, she complied. Bishop got out of the car and pulled a gun. He ordered them out of the car. Mr. Morris gave his wallet to Bishop. Bishop then punched Mr. Morris in the face a couple of times and threw him in the backseat with Miss Richardson and the defendant. Bishop got into the driver's seat, and Mozella Newsome got into the front passenger seat. Bishop gave the gun to Mozella Newsome. She turned around and pointed the gun at the victims while Bishop drove for several miles.

As they drove, Miss Richardson screamed for help. Bishop instructed the defendant to "shut her up." The defendant punched Miss Richardson numerous times in the head and face while restraining her by her hair. The defendant would later say that "[she] hit her with all [her] might." The defendant called her "a little Bartlett bitch" and continued beating her. At some point, the defendant told Miss Richardson to open her mouth. The defendant then burned her tongue with a cigarette and forced her to swallow the ashes. The defendant also struck Mr. Morris a few times. Miss Richardson asked the defendant if she was going to kill her. The defendant smiled and patted her on the head saying, "[n]o Sweetie, I'm not going to kill you." She then continued to beat Miss Richardson. She stated that the defendant was laughing and smiling the entire time. Bishop said that they should make Miss Richardson perform oral sex on the defendant. However, they never followed through. The group just laughed, and the defendant continued hitting her.

Mozella Newsome was pointing the gun at Mr. Morris while they were driving. He noticed that they had turned onto a dead end road. Sensing that "something bad was about to happen," he jumped from the car as they made a turn. Mr. Morris sustained a broken finger from the impact. The assailants and Miss Richardson continued on in the car. They stopped a few minutes later and ordered Miss Richardson out of the car. She was forced to give up her rings and all of her clothes,

except for her socks. She ran into the woods naked and bleeding. Miss Richardson hid and waited for the group to leave. After they left, she ran from house to house trying to get help. Ms. Hammelore Stewart answered her door and helped the victim. Miss Richardson sustained a broken nose and numerous bruises as a result of the incident. She was in pain for approximately two weeks.

The defendant was located a few weeks later and charged with carjacking, especially aggravated kidnapping (Morris), two counts of especially aggravated kidnapping (Richardson), especially aggravated robbery, and two counts of aggravated robbery. A jury found the defendant not guilty of carjacking, guilty of the lesser included offense of aggravated kidnapping, guilty of especially aggravated kidnapping (two counts merged), guilty of the lesser included offense of aggravated robbery (two counts merged), and guilty of the lesser included offense of robbery. She received an effective sentence of forty-five years. This appeal timely followed.

**Analysis**

I. Transfer from Juvenile Court

The defendant contends that the juvenile court failed to properly consider all of the factors required by Tennessee Code Annotated section 37-1-134, when it transferred her to adult court. However, the defendant has not provided a transcript of this proceeding. "It is the duty of the party seeking appellate review to prepare a record which conveys a fair, accurate and complete account of what transpired with respect to the issues raised by the party." State v. Dellinger, 79 S.W.3d 458, 484 (Tenn. 2002); see also State v. Ballard, 855 S.W.2d 557, 560 (Tenn. 1993). "When the record is incomplete, and does not contain a transcript of the proceedings relevant to an issue presented for review, this Court is precluded from considering the issue." Dellinger, 79 S.W.3d at 484; see also State v. Roberts, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988). Because the record is incomplete with respect to this issue, the issue is waived.

II. Denial of Continuance

The defendant contends that the trial court erred in refusing her request for a continuance after the case was severed from the co-defendants. The granting or denial of a motion for a continuance lies in the sound discretion of the court. The ruling on the motion will not be disturbed unless the record clearly shows abuse of discretion and prejudice to the party seeking a continuance. Blake v. Plus Mark, Inc., 952 S.W.2d 413, 415 (Tenn. 1997). The defendant argues that her trial strategy changed after the cases were severed. The defendant wanted to have an independent psychological evaluation performed. The trial court found that the defendant had ample time to prepare for the possibility of being tried together with the co-defendants or individually. As the trial court found, if the defendant needed an evaluation on the day of trial, she needed one a month earlier. The record does not indicate that the trial court abused its discretion by denying the continuance. Furthermore, the defendant has failed to demonstrate that she was prejudiced by the denial.

III.  Tape Recorded Statement

The defendant contends that the trial court erred in overruling a motion in limine regarding the introduction of the defendant's tape recorded statement.  Several months before trial, the State provided the defense with a transcript of the statement given by the defendant.  A tape recording of the statement given also existed.  However, the State claimed that it was not aware of the tape until trial.  The defense was provided with a copy of the tape on the first day of trial.  The defense requested that the trial court exclude the tape recorded statement.  However, there was no objection to the use of the transcript.  The trial court allowed the tape to be played for the jury and introduced it into evidence.  The defendant additionally contends that the tape should not have been introduced because it is not verbatim to the transcript.

Even if there was a discovery violation, the defendant has failed to show prejudice.  When there has been a failure to produce discoverable material within the allotted time, the trial judge has the discretion to fashion an appropriate remedy, such as a continuance.  Tenn. R. Crim. P. 16(d)(2).  Whether the defendant has been prejudiced by the failure to disclose is always a significant factor.  State v. Baker, 751 S.W.2d 154, 160 (Tenn. Crim. App. 1987).  Exclusion of the evidence is a drastic remedy and should not be implemented unless there is no other reasonable alternative.  See, e.g., State v. House, 743 S.W.2d 141, 147 (Tenn. 1987).  After listening to the tape, we conclude that it is essentially identical to the transcript.  This issue is without merit.

IV.  Photos of the Victim

The defendant contends that the trial court erred in overruling its motion in limine regarding certain photos of the victim.  Until the trial began, the State had provided the defense with only two photos of Miss Richardson taken after she arrived at the hospital.  There were ten other photos taken that had not been produced.  The State claimed that it was not aware of any additional photos.  Apparently, the additional photos were at the lab waiting to be developed.  The other photos were turned over to the defense on the second day of trial.  The trial court allowed all of the photos of Miss Richardson to be introduced by the State.

As with the tape recorded statement, even if there was a discovery violation, the defendant has failed to show prejudice.  The defendant was already in possession of two photographs of Miss Richardson that showed the injuries she sustained as a result of the incident.  We agree with the trial court that the photos that the defendant did have were more revealing than the additional photos.  The defendant claims that by not having the photos earlier, she did not have the opportunity to have them examined by an expert to determine the cause of the injuries depicted in the photos.  She offers no reason as to why she did not have the photos in her possession examined.  The defendant has failed to show actual prejudice.  We will not presume prejudice based on mere allegations.  This issue is without merit.

V. Expert Testimony Regarding the Defendant's Mental Condition

During the defendant's bond hearing in May of 2000, a psychological report of the defendant was introduced. It indicated that the defendant may have mental defects. On the first day of trial, the defendant filed a motion seeking an additional mental evaluation. See Tenn. R. Crim. P. 12.2(b). The defendant claimed that the trial court's severance of the defendants changed her strategy so that an additional mental evaluation was necessary. The trial court denied the introduction of expert testimony regarding the defendant's mental condition.

If a defendant intends to introduce expert testimony regarding a mental disease or defect, the defendant must give notice to the district attorney in writing prior to the trial. Tenn. R. Crim. P. 12.2(b). If the defendant fails to give proper notice, "the court may exclude the testimony of any expert witness offered by the defendant." Id. at (d). The court may grant additional time for good cause shown. Id. at (b). The trial court found that if the defendant's mental condition was an issue after the severance, then it was an issue before the severance. The defendant had been aware of the information contained in the initial report for over a year. No showing of good cause has been made in this case. This issue is without merit.

VI. Subsequent Crimes of the Co-defendant

The defendant contends that the trial court erred in not allowing evidence of subsequent crimes committed by Co-defendant Bishop. The defendant did not make an offer of proof indicating when these crimes occurred or if they had any relevance to this case. This issue is waived because the defendant failed to make an offer of proof as to this testimony. See Tenn. R. App. P. 36(a); State v. Eldridge, 951 S.W.2d 775, 783-84 (Tenn. Crim. App. 1997).

VII. Lesser Included offenses

The defendant contends that the trial court erred in failing to charge certain lesser included offenses. Trial counsel orally requested that the jury be instructed all the way down to theft on the aggravated robbery charge and all the way down to false imprisonment on the especially aggravated kidnapping charges. The trial court instructed the jury down to robbery and kidnapping as lesser included offenses.

The trial in this case began on January 28, 2002. In 2001, the Tennessee legislature amended Tennessee Code Annotated section 40-18-110 to provide that an instruction as to a lesser included offense is waived unless the defendant requests in writing, prior to the trial court's charge to the jury, that such an instruction be provided to the jury. Tenn. Code Ann. § 40-18-110(c). This amendment to Tennessee Code Annotated section 40-18-110 governs all trials on or after January 1, 2002. 2001 Tenn. Pub. Acts 338, § 2. Because the defendant did not request an instruction on the lesser included offenses of theft and false imprisonment in writing prior to the trial court's charge to the jury, the defendant has not presented a ground upon which relief may be granted. See Tenn. Code Ann. § 40-18-110(c). Therefore, this issue is without merit.

Even if the trial court erred in failing to charge down to theft and false imprisonment as lesser included offenses, the error was harmless. "In applying the lesser-included offense doctrine, three questions arise: (1) whether an offense is a lesser-included offense; (2) whether the evidence supports a lesser-included offense instruction; and (3) whether an instructional error is harmless." State v. Allen, 69 S.W.3d 181, 187 (Tenn. 2002). We agree with the parties that theft is a lesser-included offense of especially aggravated robbery and false imprisonment is a lesser-included offense of especially aggravated kidnapping pursuant to part (a) of the Burns v. State test. 6 S.W.3d 453, 466-67 (Tenn. 1999) (offense is lesser-included if all of its statutory elements are included within the statutory elements of the offense charged); see Tenn. Code Ann. §§ 39-13-403 (a), -305(a).

> When a lesser included offense instruction is improperly omitted, . . . the harmless error inquiry is the same as for other constitutional errors: whether it appears beyond a reasonable doubt that the error did not affect the outcome of the trial. (citation omitted). In making this determination, a reviewing court should conduct a thorough examination of the record, including the evidence presented at trial, the defendant's theory of defense, and the verdict returned by the jury.

Allen, 69 S.W.3d at 191.

In indictment number 01-00561, the defendant was charged with the especially aggravated kidnapping of Mr. Morris, by use of a handgun. The trial court charged the jury down to kidnapping. The defendant was convicted of aggravated kidnapping. The evidence was overwhelming and undisputed that the kidnapping of Mr. Morris was accomplished through the use of a deadly weapon. Therefore, any error in failing to charge false imprisonment was harmless. Allen, 69 S.W.3d at 189. In indictment number 01-00562, the defendant was charged with the especially aggravated robbery of Miss Richardson, by use of a handgun and causing serious bodily injury. The trial court charged down to robbery. The defendant was convicted of aggravated robbery. As with the previous charge, the evidence was overwhelming and uncontroverted that the kidnapping was accomplished by the use of a deadly weapon. Additionally, the evidence was overwhelming that the victim suffered serious bodily injury. Any error in failing to charge theft was harmless. Id. at 189. In indictment number 01-00564, the defendant was charged with alternatively committing the especially aggravated kidnapping of Miss Richardson, by either use of a deadly weapon or via inflicting serious bodily injury. As noted above, the trial court charged down to kidnapping, but the jury convicted the defendant of the charged offense. As with Mr. Morris, the evidence was overwhelming and uncontroverted that the kidnapping was accomplished with a deadly weapon. The evidence was overwhelming that Miss Richardson suffered serious bodily injury. . Therefore, any error in failing to charge false imprisonment was harmless. Id.

Finally, in indictment number 01-00563, the defendant was charged with the aggravated robbery of Mr. Morris, by use of a deadly weapon. The trial court charged down to robbery, and the jury convicted the defendant of robbery. As applied to this case, robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a). Theft is defined as the "intent to deprive the owner of property, [when] the person knowingly obtains or exercises control over the property without the

owner's effective consent." Id. at -14-103. In this case, it is undisputed that Mr. Morris was put into fear when the gun was produced and that his wallet was stolen as a direct result. Pursuant to Allen, any error in not charging below robbery was harmless. 69 S.W.3d at 189.

VIII. Sentencing

The defendant contends that the sentence imposed by the trial court is excessive. A defendant who challenges his or her sentence has the burden of proving the sentence imposed by the trial court is improper. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments; State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). It is this Court's duty to conduct a *de novo* review of the record with a presumption the trial court's determinations are correct, when a defendant appeals the length, range, or manner of service of his or her sentence. Tenn. Code Ann. § 40-35-401(d). The presumption of correctness is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543-44 (Tenn. 1999).

The trial court applied enhancement factor one (previous criminal history) to all of the convictions. See Tenn. Code Ann. §40-35-114.[4] The court applied enhancement factors five (exceptional cruelty), six (injuries particularly great), seven (committed to gratify), and ten (risk to human life was high) only to the convictions for aggravated kidnapping and especially aggravated kidnapping. Id. The trial court applied factor one based on the defendant's admission that she had used marijuana and that she had been adjudicated delinquent for car theft. The pre-sentence report indicates that the defendant had no prior convictions. The trial court was apparently referring to a document submitted in the bond hearing that showed the car theft. That document was not introduced into evidence and is not a part of the record. However, her drug use does indicate prior criminal behavior and would support application of this factor.

It is well established that proper application of enhancement factor five requires a finding of cruelty under the statute "over and above" what is required to sustain a conviction for an offense. See State v. Poole, 945 S.W.2d 93, 99 (Tenn. 1997) (requiring the facts in a case to "support a finding of 'exceptional cruelty' that demonstrates a culpability distinct from and appreciably greater than that incident to" the crime). In State v. Arnett, the victim and her boyfriend were kidnapped, the boyfriend was assaulted by one of the kidnappers, the boyfriend managed to get away, and the victim was left partially naked to seek help. 49 S.W.3d 250, 258 (Tenn. 2001). The Arnett court held that the facts supported the finding that the psychological terror amounted to cruelty over and above that necessary to sustain the conviction. The facts in this case are similar. The beating of the

_____

[4] Effective July 2002, the legislature amended Tennessee Code Annotated section 40-35-114 by adding "terrorism" as an enhancement factor. 2002 Tenn. Pub. Acts, ch. 849, § 2(c). "Terrorism" is listed as factor (1), thus renumbering the previous factors as (2) through (23). See Tenn. Code Ann. § 40-35-114 (Supp. 2002). Our opinion refers to the enhancement factors as they existed at the time of sentencing as specified in Tennessee Code Annotated section 40-35-114(1997).

victims was not necessary to sustain the kidnapping convictions. We conclude that the trial court properly applied factor five.

The trial court also found that the injuries inflicted in this case were particularly great. Miss Richardson sustained a broken nose and numerous bruises as a result of the beating. She stated that she had pain for two weeks. The burn to her tongue apparently produced no lasting effects. Mr. Morris sustained a broken finger, swollen hand, and bruising. These injuries were not of the magnitude contemplated by this enhancement factor. The trial court erred in its application of factor six.

The trial court next found that the defendant engaged in her crimes to gratify a desire for pleasure or excitement. Application of enhancement factor seven requires an examination of the defendant's motive for committing the offense. State v. Kissinger, 922 S.W.2d 482, 490 (Tenn. 1996). While the defendant's initial motive for these crimes may have been robbery, her actions went beyond those necessary for robbery. The defendant laughed and smiled while repeatedly beating the defendant. She laughed as the victim was stripped naked and left in the woods. She called her names and burned her with a cigarette. Additionally, the psychological report completed in 1999 and introduced during sentencing indicates that the defendant enjoys "the tension of danger." The trial court correctly applied factor seven.

The trial court applied factor ten, finding that the risk to human life was high. The mode of especially aggravated kidnapping of Mr. Morris charged in the indictment is that the defendant "accomplished [the kidnapping] with a deadly weapon." See Tenn. Code Ann. § 39-13-305(a)(1). When an offense is committed with a deadly weapon, it is inherent within the offense that there is a risk to human life and the potential for injury is great. See State v. Hill, 885 S.W.2d 357, 363 (Tenn. Crim. App. 1994); State v. Kern, 909 S.W.2d 5, 7-8 (Tenn. Crim. App. 1993). Because this factor is inherent in the offense as charged, it should not have been applied to the conviction for the aggravated kidnapping of Mr. Morris. The trial court also applied this factor to the especially aggravated kidnapping of Miss Richardson. The defendant was charged with alternatively committing the especially aggravated kidnapping of Miss Richardson by either use of a deadly weapon or via inflicting serious bodily injury. She was found guilty on both counts, and it was merged into one conviction. Again, factor ten is inherent in the offense as charged. Therefore, it should not have been applied to the conviction for the especially aggravated kidnapping of Miss Richardson. The trial court erred in its application of factor ten to the convictions for aggravated kidnapping and especially aggravated kidnapping.

The trial court found that no mitigating factors applied in this case. We agree with the trial court that none of the mitigating factors listed in Tennessee Code Annotated section 40-35-113 apply in this case. However, there is one mitigating factor not listed in that section that does apply. Tennessee Code Annotated sections 39-13-304(b)(2) and -305(b)(2), concerning aggravated kidnapping and especially aggravated kidnapping, state that "[i]f the offender voluntarily releases the victim alive . . . such actions shall be considered by the court as a mitigating factor at the time of sentencing." These code sections require "mandatory consideration of this mitigating factor if the

victim is released alive." State v. Arnett, 49 at 264 n.9. Miss Richardson was released alive, so this factor would apply to the conviction related to her especially aggravated kidnapping. Mr. Morris escaped rather than being released alive. Therefore, this factor does not apply to the conviction for the aggravated kidnapping of Mr. Morris. We conclude that this mitigating factor should be considered as to the especially aggravated kidnapping conviction related to Miss Richardson.

When there are applicable enhancement factors but no mitigating factors for a Class A felony, "the court shall set the sentence at or above the midpoint of the range." Tenn. Code Ann. § 40-35-210(d). When there are applicable enhancement and mitigating factors for a Class A felony, "the court must start at the midpoint of the range, enhance the sentence within the range as appropriate for the enhancement factors, and then reduce the sentence within the range as appropriate for the mitigating factors." Id. at -210(e). When there are applicable enhancement factors but no mitigating factors for a Class B, C, D, or E felony, "the court may set the sentence above the minimum in that range but still within the range." Id. at -210(d). When there are applicable enhancement and mitigating factors for a Class B, C, D, or E felony, the court must start at the minimum sentence in the range, then enhance appropriately for the enhancement factors, then reduce appropriately for the mitigating factors. The defendant was convicted of especially aggravated kidnapping (Class A felony), aggravated robbery (Class B felony), aggravated kidnapping (Class B felony), and robbery (Class C felony). The defendant is a Range I offender. The appropriate sentence ranges are fifteen to twenty-five years for the Class A felony, eight to twelve years for the Class B felonies, and three to six years for the Class C felony. Tenn. Code Ann. § 40-35-112(a).

The defendant was sentenced to twenty-one years on the Class A felony, ten years on each of the Class B felonies, and four years on the Class C felony. The weight given to each enhancement or mitigating factor is in the discretion of the trial court, assuming the trial court has complied with the purposes and principles of the sentencing act and its findings are supported by the record. State v. Madden, 99 S.W.3d 127, 138 (Tenn. Crim. App. 2002). The statutes prescribe no particular weight for an enhancement or mitigating factor. State v. Gosnell, 62 S.W.3d 740, 750 (Tenn. Crim. App. 2001). A defendant's sentence "'is not determined by the mathematical process of adding the sum total of enhancing factors present then subtracting from this figure the mitigating factors present for a net number of years.'" State v. Alder, 71 S.W.3d 299, 306 (Tenn. Crim. App. 2001) (quoting State v. Boggs, 932 S.W.2d 467, 475 (Tenn. Crim. App. 1996)).

The only enhancement factor that applies to the convictions for aggravated robbery and robbery is factor one, based on the defendant's marijuana use. We affirm the sentence of four years for robbery, and the sentence for aggravated robbery is reduced from ten years to nine years. The court improperly applied enhancement factors six and ten to the especially aggravated kidnapping and aggravated kidnapping convictions. However, enhancement factors one, five, and seven were properly applied. The court erred in not applying the mitigating factor (victim released alive) to the especially aggravated kidnapping conviction. The sentence for especially aggravated kidnapping is reduced from twenty-one years to twenty years, and the aggravated kidnapping sentence is reduced from ten years to nine years.

The defendant also argues that the trial court erred in imposing consecutive sentencing in this case. Generally, it is within the discretion of the trial court to impose consecutive sentences if it finds by a preponderance of the evidence that at least one of following statutory criteria apply:

(1) [t]he defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;

(2) [t]he defendant is an offender whose record of criminal activity is extensive;

(3) [t]he defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) [t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) [t]he defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) [t]he defendant is sentenced for an offense committed while on probation; or

(7) [t]he defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b).

If the court concludes the defendant is a dangerous offender under Tennessee Code Annotated section 40-35-115(b)(4), it must make two further determinations in addition to applying general sentencing principles. State v. Imfeld, 70 S.W.3d 698, 708 (Tenn. 2002). First, it must find an extended sentence is necessary to protect the public from further criminal conduct by the defendant, and, second, it must find consecutive sentencing to be reasonably related to the severity of the offenses. State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995). However, such specific factual findings are unnecessary for the other categories of Tennessee Code Annotated section 40-35-115(b). State v. Lane, 3 S.W.3d 456, 461 (Tenn. 1999).

The trial court found that the defendant was a dangerous offender whose behavior indicated little or no regard for human life and no hesitation about committing crimes in which the risk to human life was high. In determining whether consecutive sentencing would be appropriate in this case under the dangerous offender provision, the trial court stated:

-11-

I do think that exists. I think that has been borne out by the proof over and over again, and that this defendant should be considered to be a dangerous offender based on her conduct that night - on what she did and her participation in these events - the beatings that she inflicted, lengths that she went to , to ensure that these crimes were committed, the callous manner in which she allowed these crimes to occur, her order to the driver to drive on after the young man jumped out of the moving car, her laughter when blows would be struck, her laughter when the young lady's clothes were stripped off of her, and she was ordered to walk into the woods at 2:00 in the morning. Her conduct, from start to finish, in my judgment, suggests that she is a dangerous offender, and I just don't know how any other conclusion could be reached given the facts of this case.

In Wilkerson, the defendant was convicted of vehicular homicide, four counts of vehicular assault, and driving on a revoked license. 905 S.W.2d at 934. The trial court, finding that the defendant was a dangerous offender, imposed consecutive sentencing pursuant to Tenn. Code Ann. § 40-35-115(b)(4). Id. This Court, however, remanded the case for resentencing because the trial court did not expressly find that consecutive sentences were reasonably related to the severity of the offenses and necessary to protect the public against further criminal conduct. Id. at 938-39. However, it is not always necessary to remand when the court fails to make such specific findings. See State v. Alexander, 957 S.W.2d 1, 8 (Tenn. Crim. App. 1997). This court may make its own determination of whether consecutive sentencing is appropriate based on the record. Id.

Aside from marijuana use, the record does not indicate that the defendant has a history of criminal conduct. There is nothing in the record indicating that the defendant has ever been arrested for another crime. The defendant was sixteen years old at the time these offenses were committed. Her conviction for especially aggravated kidnapping must be served at 100%. Even if the sentences are served concurrently, the defendant will be required to serve the entire twenty-year sentence. We cannot say that consecutive sentencing is necessary to protect the public against further criminal conduct. Therefore, we reverse the trial court's determination that consecutive sentencing is appropriate in this case.

**Conclusion**

We conclude that the trial court erred in applying enhancement factors six and ten. The trial court also erred in not applying the mitigating factor to the especially aggravated kidnapping conviction. The sentence for aggravated robbery is reduced from ten years to nine years. The sentence for especially aggravated kidnapping is reduced from twenty-one years to twenty years. The sentence for aggravated kidnapping is reduced from ten years to nine years. The sentence of four years for robbery is affirmed. We reverse the trial court's determination that the sentences should be served consecutively. We remand to the trial court to amend the judgment for case number 01-

00564 to reflect that the defendant was a standard violent offender rather than a repeat violent offender. We affirm the judgments of the trial court in all other respects.

_____
JOHN EVERETT WILLIAMS, JUDGE